AMO REALTY COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 48839. Filed July 29, 1955.

*Alfred Swedlaw, Esq.,* and *Samuel Tenenbaum, Esq.,* for the petitioner.

*Lester R. Uretz, Esq.,* for the respondent.

OPINION.

Rice, *Judge:* Petitioner argues that the $20,000 payment received from the partnership in 1945 was not personal holding company income but was, in fact, a capital contribution in that amount from the three Bromberg brothers. In the alternative, it argues that even if the $20,000 payment was not a capital contribution it was not received "as compensation for the use of, or right to use, property of the petitioner."

Although we have given careful consideration to all of the evidence in the record before us, we have found nothing which establishes the $20,000 payment as a capital contribution from the Brombergs. All of the documentary evidence in the record clearly denominates the payment as rent and nothing else. Petitioner so reported the sum on its delinquent corporation return. The terms of the lease between it and the partnership provided for the payment of rent during the "short term" of the lease. In addition, Robert H. Bromberg testified that insofar as he knew the payment to petitioner was deducted by the partnership as an expense. The accountant testified to the same effect. Nor was there any evidence that the partners' capital or drawing accounts were charged with the $20,000 payment. Although petitioner claims that the payment was a capital contribution, Robert H. Bromberg did not explicitly testify that he and his brothers considered the payment to be a capital contribution by them. The only statement which he made with respect to what he thought the payment was was in answer to the question:

I want to ask you as a matter of ordinary understanding and judgement on your part, was that money paid as compensation for the use of the Amo Realty Company property which we are discussing here?

He testified:

I didn't understand it as use because the building was under construction and we couldn't use it. I understand that it was customary and proper that Bromberg and Company should contribute money to Amo during the period under which they were building the building for Bromberg and Company to occupy.

That testimony is not sufficient to establish petitioner's contention that the amount received by it from the partnership was a capital contribution.

We are also unable to agree with petitioner's alternative argument that the payment was not for the use of, or the right to use, its property. Petitioner contends that the building itself was the property which the partnership was interested in occupying and that the partnership could not have the use of, or the right to use, the building since it was not in existence during the year in question.

The lease which petitioner entered into with the Bromberg partnership provided for rental payments during the year 1945 substantially equal to the amount which petitioner actually received in that year. The partners, of course, knew at the time the lease was made that the building would not be ready for occupancy until sometime in 1946. They, nevertheless, contracted to pay rent of $2,000 per month for the so-called short term of the lease. By making the lease and agreeing to pay the rent specified, the partnership unquestionably had the right to use the property in whatever form it existed in 1945, and contracted and paid rent pursuant to its contract for that right.

The legislative purpose behind the personal holding company provisions of the Code are too manifest and too all-inclusive to permit calling the $20,000 payment here anything other than rent. It was clearly denominated as rent by the parties at the time the lease was made and subsequently so treated by them until the question of petitioner's tax liability arose. The fact that the partners agreed to and did pay rent to petitioner for a short period prior to the time when the premises were ready for occupancy is not a basis for distinguishing this case from the ordinary situation where more than 80 per cent of a personal holding company's income is derived from compensation paid by persons owning more than 25 per cent of its stock, for the use of, or the right to use, its property. *Hatfried, Inc.* v. *Commissioner*, 162 F. 2d 628 (C. A. 3, 1947) ; *Randolph Products Co.* v. *Manning*, 176 F. 2d 190 (C. A. 3, 1949) ; *O. Falk's Department Store, Inc.*, 20 T. C. 56 (1953) ; and *Western Transmission Corporation*, 18 T. C. 818 (1952).

The petitioner also argues on brief that the respondent's determination that its 1945 income was "personal holding company income would, under all the facts and circumstances, be harsh and unjustified." This argument is advanced in view of the enactment of section 223 of the Revenue Act of 1950.[2] Congress there provided that section 502 (f) of the Code should not apply to rents received by what would otherwise be a personal holding company during taxable years ended after December 31, 1945, and before January 1, 1950, if such rents were received for the use of its property in the operation of a bona fide commercial venture by persons holding 25 per cent or more of its stock. We pointed out in *O. Falk's Department Store, Inc.*, *supra*, that section 223 of the 1950 Act was limited exclusively to the years therein specified. In granting the relief for those years, Congress, as evidenced by the report of the Senate Finance Committee,[3] recognized

---

[2] 64 Stat. 947.
[3] S. Rept. No. 2375, 81st Cong., 2d Sess., p. 64.

that even when a personal holding company's property was used for a bona fide commercial purpose the arrangements incident thereto could result in tax avoidance. It noted that fact as the reason for not extending the provisions of section 223 to years after 1950.

Although the petitioner here, apparently through no fault of its own, has run afoul of a technical provision of the Code, we are unable to grant its prayer for relief as it falls squarely within the statutory definition of a personal holding company, and the respondent is upheld on this issue.

We found as a fact that petitioner's failure to file a personal holding company return for the year 1945 was due to reasonable cause. The Bromberg brothers were not versed in tax matters and relied exclusively on the advice of their accountant and lawyer, whom the parties stipulated were competent tax advisors. Robert H. Bromberg was present at the only discussion which was held as to whether a personal holding company return should be filed, and it was upon the advice of counsel that the decision was reached not to file such a return. The circumstances here are somewhat unusual, involving as they do a transfer of $20,000 by the three brothers as equal partners to their wholly owned corporation prior to the completion and occupancy of the building. The intended income of the petitioner was to be rent and we have held herein that this first payment of $20,000 was rent, which is personal holding company income. But we cannot say that the petitioner should have doubted the advice of the attorney and the accountant based upon their conclusion that this particular payment was not personal holding company income. Despite any poor judgment or inconsistency which may be charged to the attorney and the accountant in connection with the delinquent filing of the income tax return and the failure to file a personal holding company return, nevertheless they never changed their advice to the petitioner that it did not have to file a personal holding company return, and the petitioner, in relying upon that advice, was not guilty of willful neglect. We think the facts of the instant case fall well within the scope of those decisions which hold that a taxpayer's failure to file a personal holding company return is due to reasonable cause if it is unversed in tax matters and relies exclusively on the advice of a competent attorney or accountant to whom a full disclosure of all facts is made. *O. Falk's Department Store, Inc.*, supra; *Western Transmission Corporation*, supra; *Garrett Holding Corporation*, 9 T. C. 1029 (1947) ; and *Safety Tube Corporation*, 8 T. C. 757 (1947), affd. 168 F. 2d 787 (C. A. 6, 1948).

*Decision will be entered under Rule 50.*