GEORGE E. BAILEY AND AGNES M. BAILEY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2185-62.   Filed February 25, 1964.

*George E. Bailey,* pro se.
*Hugh C. McMahon,* for the respondent.

#### OPINION

BLACK, *Judge:* The Commissioner has determined a deficiency in petitioners' income tax for the year 1960 in the amount of $77.02. The deficiency is due to the addition to the taxable income shown on petitioners' return of "(a) Additional income—Commissions earned $257.40." The adjustment is explained in the deficiency notice as follows:

It is determined that you realized income from insurance commissions in the amount of $257.40 which you failed to report on your income tax return. Accordingly, your taxable income is increased $257.40.

The facts have all been stipulated and are adopted as our findings of fact.   We summarize them as follows:

Petitioners are husband and wife who resided at Brentwood 17, Mo., during the taxable year 1960 and at the time the notice of deficiency was mailed to them. Their joint Federal income tax return for the year ended December 31, 1960, was filed with the district director of internal revenue, St. Louis, Mo. George E. Bailey, hereinafter referred to as petitioner, was, during 1960 and for many years prior thereto, an employee of the St. Louis-San Francisco Railway Co. at St. Louis. In addition, petitioner, during 1960, also maintained a law practice in the city of St. Louis and was a member of the board of directors of the Missouri Fidelity Insurance Co., hereinafter referred to as the Company, being so elected on February 20, 1960. During 1960 petitioner was also an assistant secretary of the Company.

The Company is a legal reserve life insurance company incorporated under the laws of the State of Missouri, then maintaining home offices in the city of St. Louis and is primarily engaged in the business of selling life insurance. On or about August 17, 1960, at the request of petitioner, petitioner was appointed as an agent of the Company and thereby acquired the right to sell life insurance for the Company. Petitioner was duly licensed by the State of Missouri to sell life insurance. During the taxable year 1960, petitioner had no written agent's agreement with the Company; however, an oral agreement respecting regular and renewal sales commissions existed between the parties during the taxable year involved herein. This oral agreement between petitioner and the Company imposed upon the Company the contractual obligation to pay petitioner a commission on all premiums paid on policies which petitioner wrote as compensation for his service in placing the policy with the Company. Under the oral agreement with the Company, petitioner was to receive or retain a percentage of the premiums on all policies procured by him in accordance with a schedule contained in an "Agent's Letter of Understanding."

By application dated October 13, 1960, petitioner made application for $10,000 in life insurance on his own life with the Company. The application was duly granted and a life insurance policy for that amount was issued to petitioner. The annual premium on the policy was $514.80. As a result of his oral contract with the Company, petitioner was entitled to a regular commission on this policy for 1960 in the amount of $257.40.

On its books and records for the calendar year 1960, the Company treated the transaction involved herein as if it had received the entire first year's premium of $514.80 on policy No. 10333, sometimes referred to as the gross premium, and paid the petitioner the sum of $257.40 during 1960 as a commission on policy No. 10333 written by petitioner on his own life even though petitioner, in fact, remitted to the Company only $257.40, hereinafter sometimes referred to as a net premium, which is the gross premium minus commission.

Vernon's Annotated Missouri Statutes, section 375.936 provides:

Sec. 375.936. Unfair Practices Defined

The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:

\*       \*       \*       \*       \*       \*       \*

(8) "Rebates."

(a) Except as otherwise expressly provided by law, knowingly permitting or offering to make or making any contract of life insurance, life annuity or accident and health insurance, or agreement as to such contract other than as plainly expressed in the contract issued thereon, or paying or allowing, or giving or offering to pay, allow, or give, directly or indirectly, as inducement

to such insurance, or annuity, any rebate of premiums payable on the contract, or any special favor or advantages in the dividends or other benefits thereon, or any valuable consideration or inducement whatever not specified in the contract; or giving, or selling, or purchasing or offering to give, sell, or purchase as inducement to such insurance or annuity or in connection therewith, any stocks, bonds, or other securities of any insurance company or other corporation, association, or partnership, or any dividends or profits accrued thereon, or anything of value whatsoever not specified in the contract.

The Company is required by Missouri statute to write life insurance policies at fixed or uniform rates and the Company issues no policy for a consideration less than the uniform annual rate or premium as recited in each policy.

Life insurance policy No. 10333, with application therefor attached to the policy and incorporated therein, was issued by the Company on September 28, 1960, to petitioner and provides, *inter alia*, as follows:

(a) The total annual premium payable is $514.80 as stated on the first page of the insurance policy, as well as in the application attached thereto which was signed by petitioner as the proposed insured and also as the agent.

(b) The first page of the policy provides in pertinent part as follows:

#### CONSIDERATION

This contract is issued in consideration of the payment in advance of the annual premium specified above, and a like sum in advance on each anniversary of the date of issue during the continuance of this contract, or until prior death of the Insured, except that premiums may be paid in semi-annual or quarterly installments as provided herein.

On their Federal income tax return for the taxable year ended December 31, 1960, petitioners reported as taxable income the amount of $12,790.92. In computing their taxable income, petitioners disclosed on their return, but did not include in taxable income, the sum of $257.40 which petitioner was entitled to as a commission on the aforementioned life insurance policy. The disclosure on his income tax return with reference to the insurance premium involved here was as follows:

Taxpayer is an employee of St. Louis-San Francisco Railway Company and, in addition, a practicing attorney. During 1960 he was elected to the Board of Directors of Missouri Fidelity Life Insurance Company, a new company, with offices at 4221 Lindell Boulevard, St. Louis, Missouri. At taxpayer's request he was designated an agent for said Life Insurance Company and thereafter applied for and received a policy on his own life for which he paid a net premium of $257.40. The gross premium payable, if the policy had been sold to another, would have been $514.80. Inasmuch as taxpayer is not regularly engaged in the business of selling insurance, it is not considered that income resulted from this transaction and the circumstances are reported for information purposes only.

Petitioners assigned error to the determination of the Commissioner as follows:

3. The determination of tax set forth in the said notice of deficiency is based upon the following error:

In determining the taxable income of petitioners for the year 1960, the Commissioner erroneously included as an addition to income the sum of $257.40 erroneously held by the Commissioner to constitute a commission on life insurance purchased by petitioner George E. Bailey.

We think the Commissioner did not err and should be sustained. Petitioner relies upon our decision in *Sol Minzer*, 31 T.C. 1130 (1959). Our decision in that case was reversed by the U.S. Court of Appeals for the Fifth Circuit, see *Commissioner* v. *Minzer*, 279 F. 2d 338 (1960).

We think that the commission of $257.40 which petitioner received in the manner which has been stipulated was compensatory in nature and taxable in the same manner as other compensation. Petitioner performed a service for the Company in procuring the insurance policy in question and thereby became entitled to the commission of $257.40. Petitioner obtained the benefit of the commission by remitting only the net premium on his policy to the Company, after deducting his commission from the annual premium which normally would be payable.

Gross income is defined in section 61(a), I.R.C. 1954, as "all income from whatever source derived," after which the section proceeds to enumerate a number of various items or types of income that are specifically included in gross income. Section 61(a)(1) is printed in the margin.[1] The provisions of section 61(a)(1) providing for the inclusion in gross income of all compensation for services, including commissions, we think are clearly broad enough to include the commission here in question.

Respondent urges as his main authority in support of his position the Fifth Circuit's decision in *Commissioner* v. *Minzer, supra*. In that case the taxpayer either purchased or contracted to carry policies of insurance on his own life with two companies which he represented. Under his contracts with the companies, he was entitled to certain commissions on the aforesaid policies as compensation. The court held that the commissions on these policies constituted taxable income to the taxpayer. The court stated that:

It does not seem to us that the tax incidence is dependent upon the tag with which the parties label the connection between them. The agent or broker, or

---

[1] SEC. 61. GROSS INCOME DEFINED.

(a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

(1) Compensation for services, including fees, commissions, and similar items;

by whatever name he be called, is to receive or retain a percentage of the premiums on policies procured by him, called commissions, as compensation for his service to the company in obtaining the particular business for it. The service rendered to the company, for which it was required to compensate him, was no different in kind or degree where the taxpayer submitted his own application than where he submitted the application of another. In each situation there was the same obligation of the company, the obligation to pay a commission for the production of business measured by a percentage of the premiums. In each situation the result was the same to the taxpayer. The taxpayer obtained insurance which the companies were prohibited by law from selling to him at any discount. 14 Vernon's Tex. Civ. Stat. Insurance Code, Art. 21.21. It cannot be said that the insurance had a value less than the amount of the premiums. It must then be said that a benefit inured to the taxpayer to the extent of his commissions. The benefit is neither diminished nor eliminated by referring, as does the Tax Court, to the word "commission" as a verbal trap. The commissions were, we conclude, compensation for services and as such were income within the meaning of 26 U.S.C.A. (I.R.C. 1954) § 61(a)(1).

We think *Commissioner* v. *Minzer, supra,* is in point and we have concluded that we will follow it. Cf. *Ostheimer* v. *United States,* 264 F. 2d 789 (C.A. 3, 1959).

Reviewed by the Court.

*Decision will be entered for the respondent.*

HOYT, *J.,* dissents.